[No. C066835. Third Dist. Mar. 8, 2012.]

QUAIL LAKES OWNERS ASSOCIATION, Plaintiff and Respondent, v. VLADIMIR F. KOZINA, Defendant and Appellant.

**COUNSEL**

Law Offices of Mayall, Hurley, Knutsen, Smith & Green and Paul A. Kozina for Defendant and Appellant.

Inman Law Group, Bruce Ray Inman; Peters & Freedman and Laurie S. Poole for Plaintiff and Respondent.

**OPINION**

**DUARTE, J.**—Quail Lakes Owners Association (the Association) filed a petition seeking an order modifying its governing laws to reduce a super-majority voting restriction, a special proceeding authorized by Civil Code section 1356 (§ 1356). The trial court conducted a hearing and granted the Association's amended petition. Objector Vladimir F. Kozina (Kozina) timely filed this appeal.[1]

On appeal, Kozina contends the manner of notice of the hearing violated due process, and the trial court abused its discretion in granting the amended petition. We disagree and shall affirm.

## INTRODUCTION

The organic charters for many older homeowners associations required supermajority votes for amendments, but voter apathy and other reasons often

---

[1] Kozina, an attorney, is represented by Paul A. Kozina, another attorney in his firm, but sometimes acted in propria persona in the trial court.

make achieving such a supermajority impractical. (See *Blue Lagoon Community Assn. v. Mitchell* (1997) 55 Cal.App.4th 472, 477 [64 Cal.Rptr.2d 81]; 1 Sproul & Rosenberry, Advising Cal. Common Interest Communities (Cont.Ed.Bar 2011) Amending the Governing Documents, § 9.30, p. 660.) Section 1356 creates a court procedure for lowering the supermajority requirement.

■ Section 1356, "part of the Davis-Stirling Common Interest Development Act (the Act), provides that a homeowners association, or any member, may petition the superior court for a reduction in the percentage of affirmative votes required to amend the [governing documents] if they require approval by 'owners having more than 50 percent of the votes in the association . . . .' [Citation.] [Fn. omitted.] The court may, but need not, grant the petition if it finds all of the following: Notice was properly given; the balloting was properly conducted; reasonable efforts were made to permit eligible members to vote; '[o]wners having more than 50 percent of the votes . . . voted in favor of the amendment'; and '[t]he amendment is reasonable.' " (*Peak Investments v. South Peak Homeowners Assn., Inc.* (2006) 140 Cal.App.4th 1363, 1366–1367 [44 Cal.Rptr.3d 892].)

## PROCEDURAL BACKGROUND

On March 19, 2010, the Association filed its petition, alleging an inability to make prudent changes to its "Covenants, Conditions and Restrictions" (CCR's), despite majority support among the homeowners, due to a supermajority requirement. The original and proposed CCR's were attached. The petition alleged that in a 2009 election, of 1,958 "membership votes," 1,409 votes were cast, of which 1,209 voted in favor of the new CCR's.

On June 17, 2010, an objection was filed, in part alleging the defeat of the new CCR's in the prior election was due to a "strong campaign in opposition" based on the unreasonableness of the proposed governance changes. The tenor of the objection was that there was a rift in the community; however, Kozina was the only objector. The objection contended the evidence attached to the unverified petition was not properly authenticated, and contended the manner of notice was insufficient to satisfy due process.[2]

On June 23, 2010, Thomas G. Murphy, the Association's manager, filed a declaration responding to the opposition. Murphy's declaration, with attachments, tended to show that the new CCR's had been crafted with notice and opportunity for comment, but acknowledged an apparent rift within four

---

[2] Although the objection referenced a declaration by Kozina that purportedly attached documentary exhibits, no such declaration is in the record on appeal.

subassociations, one of which, the "Neighborhood" association, declined to participate in crafting the new CCR's.

On July 1, 2010, the petition was denied without prejudice for lack of evidence. The petition was not verified, and the Association's counsel did not attach any declarations to it, as is recommended. (1 Sproul & Rosenberry, *supra*, § 9.34, p. 664.) The trial court explicitly noted these deficiencies, and declined to allow live testimony to cure them. The court set dates for the filing of an amended petition, opposition and reply, as well as a date for hearing on the amended petition. The trial court made clear that it wanted adequate time and attention given to noticing the membership.

The Association filed an amended petition on July 23, 2010. No supporting declarations were attached, but it was verified by the Association president, Penelope A. Calvird, who declared under penalty of perjury: "I have read the foregoing Amended Petition. The matters stated in the foregoing Amended Petition are true and correct of my personal knowledge."

On August 5, 2010, the trial court reaffirmed by written order the hearing date previously set for September 2, 2010, and ordered notice be given to the homeowners on or before August 13, 2010. The order required any written opposition to the amended petition be filed by August 17, 2010.

On August 16, 2010, Kozina filed opposition to the amended petition. His objections focused on what he characterized as insufficient notice permitted by the trial court's August 5, 2010, order. Despite multiple references to the "membership," the opposition was in Kozina's name only. However, the opposition also included declarations from three homeowners stating they had not received notice in time to review the documents and consult counsel.[3] The opposition declined to "address procedural and substantive deficiencies" in the amended petition, "reserving expressly the right to submit" additional briefing.[4]

At the September 2, 2010, hearing on the amended petition, the trial court once again declined the Association's counsel's offer to present live testimony. Kozina conceded the Association's president had verified the amended petition, but argued she had not stated her competence or authenticated the documents attached to the amended petition.

---

[3] Even counting these three homeowners as objectors, only four of the 1,958 homeowners contained in the membership vote number objected to the amended petition or to the procedures for considering the amended petition.

[4] No additional prehearing briefing by Kozina appears in the record.

On September 30, 2010, the trial court granted the amended petition in a written ruling, and directed counsel to prepare a further order. After considering a proposed order and opposition, the trial court signed a final order granting the amended petition on October 19, 2010. Kozina timely appealed therefrom.

## DISCUSSION

### I

#### *Due Process Claim*

Kozina contends the trial court's order setting forth the manner of notice of and briefing for the September 2, 2010, hearing violated due process, pointing out the order permitted notice by mail as late as August 13, the opposition was due on August 17, and a weekend intervened. Kozina contends this order unduly compressed the time for homeowners to object.

But *Kozina* filed a timely objection that was considered by the trial court, although he chose to address only notice. Nowhere in his briefing does Kozina contend that he was unable to articulate all of the arguments he wanted to make, or unable to muster the evidence he wanted the trial court to consider, due to time constraints. He has not shown or even attempted to show that he was prejudiced by the time limits set by the briefing order. We may not reverse a judgment for a procedural error absent a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 [16 Cal.Rptr.2d 38].) Absent an explicit argument that a procedural error caused prejudice, we are under no obligation to address the claim of error. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105–106 [87 Cal.Rptr.2d 754].) Therefore we reject Kozina's claim.

Kozina argues *other* homeowners might have been prejudiced by the briefing order. However, we agree with the Association that Kozina lacks standing to assert the due process rights of other homeowners.

■ " '[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' " (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1341 [9 Cal.Rptr.3d 477] [association could not raise purported legal rights of *prospective* members]; see *Johnson v. Department of Social Services* (1981) 123 Cal.App.3d 878, 883 [177 Cal.Rptr. 49]; cf. *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 619–620 [156

Cal.Rptr. 718, 596 P.2d 1134] [although Horn alleged notice to other land-owners had not been adequate before he bought his property, he was not seeking to vindicate their rights, but "his own claim to due process"].) The general rule that a party cannot represent the interests of others "is not confined to plaintiffs; it may also arise when one seeks to defeat a claim by asserting the paramount rights of a third person." (*Jasmine Networks, Inc. v. Superior Court* (2009) 180 Cal.App.4th 980, 991 [103 Cal.Rptr.3d 426].)[5]

In his reply brief, Kozina claims he has "associational" standing, and likens this case to that of a derivative action filed on behalf of all shareholders of a corporation. We are not persuaded.

■ Kozina's associational standing claim is predicated on the following rule: " '[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " (*Property Owners of Whispering Palms, Inc. v. Newport Pacific, Inc.* (2005) 132 Cal.App.4th 666, 673 [33 Cal.Rptr.3d 845].)

Kozina overlooks the fact that *the Association* is the de facto representative of the homeowners. Kozina did not and does not purport to represent a subgroup within the Association. Instead, the record shows he is attempting to assert the rights of people who allegedly *would have* objected to the petition if provided sufficient notice. But any such persons could have achieved standing for themselves by moving to vacate the order granting the petition, and appealing if that motion were denied. (See *People ex rel. Reisig v. Broderick Boys* (2007) 149 Cal.App.4th 1506, 1516–1517 [59 Cal.Rptr.3d 64].) No one did so.

■ Kozina analogizes to derivative shareholder suits. "The fundamental purpose of a derivative action is to provide a means by which a stockholder may seek to enforce the rights of a corporation when the corporate board refuses to do so. [Citations.] If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1114 [72 Cal.Rptr.3d 129, 175 P.3d 1184].) But this appeal does not challenge any action or omission by the Association; it challenges the court's order amending the CCR's. Any

---

[5] Of course, either Kozina or his counsel could have represented any other homeowner in their capacity as attorneys. But the record does not indicate either did so.

aggrieved homeowner had a remedy, and because a derivative action does not advance the rights of individual shareholders, Kozina's analogy is unpersuasive.[6]

Our conclusion that Kozina cannot raise due process claims on the purported behalf of objecting homeowners answers his related contention that the trial court improperly refused to consider two letters purportedly submitted by homeowners: If other homeowners' rights were violated, they had a remedy.[7]

Accordingly, we reject Kozina's due process claims.

II

*The Section 1356 Petition*

Kozina asserts the trial court abused its discretion when it granted the Association's amended petition, arguing the court failed to make proper factual findings and failed to find proper notice had been given to all entities entitled to notice. As we will explain, the findings were sufficient.

■ The trial court's ruling on a section 1356 petition is reviewed for an abuse of discretion. (*Mission Shores Assn. v. Pheil* (2008) 166 Cal.App.4th 789, 795 [83 Cal.Rptr.3d 108]; *Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 570 [71 Cal.Rptr.3d 299].) Section 1356, subdivision (c) provides the trial court may grant the petition "if it finds" that six requirements have been met.[8]

---

[6] Kozina also contends "the right to sue is greatly relaxed where the question is of public interest." In support, he relies on *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724] (*Beverly Glen*), a case holding a homeowners association was sufficiently aggrieved by a land use decision to have standing to challenge it. (*Beverly Glen, supra,* 34 Cal.App.3d at pp. 121–127.) The case does not support the view that changes to an association's internal governance structure are of such public interest that ordinary standing rules should be disregarded.

[7] We previously denied Kozina's motion to augment the record on appeal to include those letters. We express no view on Kozina's contention that the trial court should have treated those letters as valid objections to the petition.

[8] Section 1356, subdivision (c) provides in relevant part: "The court may, but shall not be required to, grant the petition if it finds all of the following: [¶] (1) The petitioner has given not less than 15 days written notice of the court hearing [to all homeowners and to lienholders and local governments entitled to notice]. [¶] (2) Balloting on the proposed amendment was conducted in accordance with all applicable provisions of the governing documents. [¶] (3) A reasonably diligent effort was made to permit all eligible members to vote on the proposed amendment. [¶] (4) Owners having more than 50 percent of the votes . . . voted in favor of the amendment. . . . [¶] (5) The amendment is reasonable. [¶] (6) Granting the petition is not improper for any reason stated in subdivision (e)."

Kozina complains that the trial court's *initial* ruling did not explicitly recite those six requirements, particularly as to whether adequate notice had been provided to lienholders and the local government, and contends that the trial court had to specify the evidence supporting each finding.

The initial ruling directed counsel to prepare a final order, from which the appeal was taken, and it is that final order we review, not the initial ruling. Contrary to Kozina's evident view, the initial ruling was not a statement of decision, it was a statement of the trial court's reasoning that cannot be used to impeach the final order. (See *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 551–552 [35 Cal.Rptr.2d 291]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 350, pp. 402–404.) The final ruling finds all six requirements have been met, including that "the Association has given not less than 15 days written notice of the Court hearing to all Association members and to all others entitled to such notice." That order is sufficient.

Kozina analogizes to Evidence Code section 352, and contends that the trial court must "provide affirmative evidence that it gave each element the consideration necessary to reach a reasoned judgment . . . ." Kozina adds that a trial court must "make an affirmative record of its exercise of discretion to facilitate meaningful review." (*Ramona Manor Convalescent Hospital v. Care Enterprises* (1986) 177 Cal.App.3d 1120, 1137 [225 Cal.Rptr. 120].)

■ However, in making an Evidence Code section 352 ruling, the trial court need neither recite each factor it considered, nor detail the evidence supporting each factor. Instead, the record need only reflect that the court weighed the relevant factors. (See *People v. Clair* (1992) 2 Cal.4th 629, 660–661 [7 Cal.Rptr.2d 564, 828 P.2d 705] [" 'Certainly, the trial judge need not expressly weigh prejudice against probative value—or even expressly state that he has done so.' "]; *People v. Gunder* (2007) 151 Cal.App.4th 412, 426 [59 Cal.Rptr.3d 817].)

■ Here, the requirements for granting a section 1356 petition were detailed in the Association's moving papers, and the trial court's final order also referenced section 1356 and deemed all necessary requirements met. Thus, the record adequately shows the trial court was aware of the requirements of exercising its discretion under section 1356. Nothing in section 1356 required the court to recite the evidence pertaining to each subfinding. We decline to add such a requirement to the statute. (See *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 184 [114 Cal.Rptr.3d 619].)

Accordingly, we reject Kozina's contention that the trial court abused its discretion in granting the amended petition.

## DISPOSITION

The judgment is affirmed. Kozina shall pay the Association's costs of this appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Nicholson, Acting P. J., and Hull, J., concurred.